In re Howard E. OWENS Debtor.

Bankruptcy No. 85–00882K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 26, 1986.
As Amended Jan. 5, 1987.

David Sambolin, Philadelphia, Pa., for debtor.

Roger M. Olsen, Asst. Atty. Gen., Edward C. Snyder, Chief, Civil Trial Section, Central Region, Karen Elias, Tax Div., U.S. Dept. of Justice, Washington, D.C., Virginia Powel, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

James J. O'Connell, Philadelphia, Pa., Chapter 13 Standing Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

In this case, we must examine two (2) issues. The first, relating to our local Motion practices, addresses the circumstances under which we will allow a party, in particular the Internal Revenue Service ("IRS"), to move for reconsideration of an Order of this Court disallowing its "Amended Claim" after a Certification that the matter was not contested. The second concerns the "merits" of the controversy: whether we will allow the IRS to file the aforesaid "Amended Claim," for what we believe is a post-petition tax claim, several months after the bar date. Somewhat reluctantly, we will grant the IRS' Motion to Reconsider this Court's earlier Order, especially as the Order may be read as disallowing all claims of the IRS in their entirety. However, ruling on the merits of the Debtor's Objection, we will order that all but $487.45 of the "Amended Claim" must be disallowed due to the IRS' untimely filing of same.

This case was filed under Chapter 13 of the Bankruptcy Code on March 11, 1985. Listed by the Debtor among his priority

claims was an obligation of $4,944.64 to the IRS for "delinquent taxes." The Plan divulges no indication of how the Debtor intended to provide for payment of this obligation.

On March 19, 1985, the Trustee dispatched Notice that the meeting required by 11 U.S.C. § 341(a) was scheduled on April 15, 1985, to all interested parties, among which was the IRS. Included in the Notice was warning that the bar date for filing claims was July 15, 1985.

On June 3, 1985, the IRS filed a Proof of Claim for a priority debt in the amount of $487.45 arising from an alleged federal income tax delinquency for the 1983 tax year. According to the Debtor, the IRS also forwarded a "Notice of Deficiency" to the Debtor in reference to his 1981 federal income taxes on June 6, 1985.[1] At that time, however, it must be noted that the Debtor had not yet filed his 1981 federal income tax return, and he did not do so until August 1, 1985.

Meanwhile, on May 28, 1985, the Trustee filed a Motion to Dismiss the Bankruptcy case, apparently due to a "feasibility" problem arising from the failure of the Debtor's Plan to provide for payment of all filed secured claims. This Motion was continued several times while the Debtor has proceeded to institute two (2) separate adversarial proceedings, at Adversary No. 85–0994K against the first mortgagee on his residence, Germantown Savings Bank, and at No. 86–0191K against a second mortgagee, Beneficial Consumer Discount Company to reduce these claims. He also filed a Motion to Avoid a Judgment Lien of Episcopal Hospital. The Judgment Lien was avoided by Order of this Court of January 2, 1986. The matter with Beneficial Consumer Discount Company was resolved by a Stipulation reducing the amount of this claim. The Court recently entered an Order set-

ting down the matter involving Germantown Savings Bank, for disposition on December 17, 1986.

On January 24, 1986, the IRS added another serious problem to those already confronting the Debtor by filing the Proof of Claim in issue, in the amount of $8,277.51, arising from alleged federal income tax delinquencies in both the 1981 and 1983 tax years. The difference from the earlier IRS proof of claim is attributable to priority claims of $4,108.45 for taxes due, $1,038.23 for interest, and a $1,657.38 increment in an unsecured claim for penalties allegedly arising from the Debtor's 1981 federal income tax return.

On May 21, 1986, the Debtor filed a "Motion ... Objecting to Allowance of Internal Revenue Service Claim # 9," in which he contended that the Proof of Claim filed by the IRS was violative of the automatic stay[2] and was filed "without first making a motion for cause shown to extend the time for filing of a claim by the United States." Although an Order Requiring Answer per Local Rule 9014.1(b)(2) and Local Bankruptcy Form 9014.1A was executed by Chief Judge Emil F. Goldhaber on May 27, 1986, a second Order Requiring Answer was, for some unknown reason, resubmitted to Judge Thomas M. Twardowski, who signed same on June 26, 1986. The Order states, in pertinent part, as follows:

> it is ORDERED that all interested persons are required to serve upon movant's attorney, whose answer is set forth below and file with the Clerk, an Answer to the Motion ... within 20 days after service of this Order, exclusive of the date of service. If no answer is filed, an order may be entered granting the relief demanded in the motion.

Accompanying the Motion was the Notice of Hearing to Consider Motion form per

---

**1.** The Debtor has attached this Notice to his Memorandum of Law in opposition to the IRS' Motion for Reconsideration. He also states therein that this dispatch was in violation of the automatic stay. We would point out that 11 U.S.C. § 362(b)(9) provides that the sending of such a notice is an exception to the stay. How-

ever, as we note below, this dispatch does evince an awareness on the part of the IRS that it had a claim against the Debtor arising from his 1981 income taxes prior to the bar date.

**2.** See page 420 n. 1 *supra*.

Local Rule 9014.1(b)(3)(i) and Local Bankruptcy Form 9014.1B, which stated that a hearing was scheduled on the Motion on August 13, 1986.

█ The Debtor's Counsel certified that he served the Motion Objecting to the IRS Claim, the above Order Requiring Answer, the Notice of Hearing to Consider Motion, and the other papers required by Local Rule 9014.1(b) to the IRS and the local United States Attorney's Office on July 14, 1986.[3] After waiting twenty-four (24) days and not having received a response, the Debtor's Counsel, in accordance with the pertinent Local Rule 9014.1(i), certified the matter as uncontested. On August 8, 1986, Chief Judge Emil F. Goldhaber signed an Order disallowing the IRS claim of $8,277.51 in its entirety. Copies of this Order were sent to both the local IRS Office and the local United States Attorney's Office.

As it developed, a document entitled as an "Opposition" to the Debtor's Motion was allegedly sent by the IRS on August 5, 1986, and arrived and was filed in the Clerk's Office on August 11, 1986. There is no indication that anyone appeared at the scheduled hearing on August 13, 1986.

On August 18, 1986, the IRS filed a Motion for Reconsideration, contending, as its sole ground, that the Opposition to the Debtor's Motion "was served on August 5, 1986, and that the claim was disallowed prior to the hearing scheduled for August 13, 1986, in the above-captioned case," presumably thereby suggesting that Judge Goldhaber erred by prematurely entering the August 8, 1986, Order.

According to the Debtor's Counsel, he received no notice that the IRS had filed any pleadings opposing his Motion until August 28, 1986, when he received a copy of the IRS' Motion for Reconsideration. The "Opposition" to the Motion was not sent to the Debtor's Counsel until early September, due to the fact that the IRS admittedly misaddressed the envelope in which this document was sent to opposing Counsel.

Given this history, it was nothing short of miraculous that Counsel for the Debtor and the IRS *both* appeared before us on September 18, 1986, the date of the scheduled hearing on the Motion for Reconsideration. After hearing argument, the Court requested the IRS and the Debtor to submit Briefs on both the issue of whether the Court should reconsider the Order of August 8, 1986, and the merits of the issue of whether the IRS' claim should be dismissed as untimely, such filings to be made on October 8, 1986, and October 28, 1986, respectively.

█ The Court, admittedly with reluctance due to the series of negligent acts by the IRS in litigation of this matter, has decided to grant the IRS' Motion to Reconsider Judge Goldhaber's Order of August 8, 1986. We must note that we totally reject the apparent argument of the IRS that its response to the Motion was timely simply because it was made prior to the August 13, 1986, hearing date. The papers generated by defense counsel and the Court per Local Rule 9014.1 should make it eminently clear to any learned individual, let alone an attorney, that an answer must be filed with the Court and served upon opposing counsel within twenty (20) days of service, or relief may be granted.[4] We do *not* agree that a mailing of an answer to the Court on August 5, 1986, which mysteriously arrives six (6) days later, or sending a misaddressed missive to the Debtor's

---

**3.** The IRS argues that the Debtor's service was not in conformity with Bankruptcy Rule 7004(a) because it was not made by certified or registered mail. However, although Rule 7004, through Bankruptcy Rule 9014, applies, the IRS overlooks the fact that Bankruptcy Rules 7004(b)(4) and (b)(5) permit service by regular mail. We do note that the Debtor did fail to serve the Attorney General of the United States, as is required by these Rules. This is another factor which we have considered in granting the IRS' Motion to Reconsider.

**4.** We have recently changed the answer period in most motions to fifteen (15) days, in order to bring the practices of this Court's Philadelphia Division in line with the practices in its Reading division. The IRS was hence the beneficiary of our previous, more liberal policy.

Counsel which arrives almost a month later, constitutes either service or filing on or before August 6, 1986, which, by our calculation, was the last date for doing so in timely fashion, even applying Bankruptcy Rule 9006(f) in such fashion as to give the IRS an extra three (3) days beyond the twenty (20) days cited on the Order Requiring Answer.

Further, we note that the IRS did not appear at the scheduled hearing on August 13, 1986. In order not to permit our local Motion practice to be a trap for the unwary, the Court is inclined to entertain a response by any party who appears at a pre-scheduled hearing to defend a Motion, even if no written response has been filed. If an accurate certification that no response has been made is filed prior to the hearing date, and an Order has already been entered, and a party and/or counsel appear at the scheduled hearing, we would normally request counsel for a represented party to file a Motion for Reconsideration per Bankruptcy Rule 9023 and Federal Rule of Civil Procedure (F.R.Civ.P.) 59(e), and allow an unrepresented party to orally move for Reconsideration. However, the IRS is a frequent litigant in our Court, and we do *not* consider it "unwary." We also note that the IRS is usually capably represented in our Court by Assistant United States Attorney Virginia Powel, who is extremely aware of, and vigilant in complying with, our Local Rules; and whose office is located only a few steps from our Clerk's Office and our Courtroom on the same floor of the United States Court House in Philadelphia. If the IRS chose to assign Counsel to this case who is unfamiliar with the Court's procedures and whose distance from the Court impeded timely filings and Court appearances, and this Counsel was not inclined to utilize the resource of even consulting with capable local counsel, we are not inclined to extend the same sympathy to it as we would to a pro se debtor or creditor appearing before our Court. Further, the lack of an appearance by counsel on behalf of IRS at the August 13, 1986, hearing belies the reliance that the IRS

professed in its Motion that the hearing would occur on that date.

Moreover, as the Debtor points out, the Order Requiring Answer *and* F.R.Civ.P. 59(e), as incorporated into our rules by Bankruptcy Rule 9023, requires timely *service* as well as *filing* of pertinent pleadings. The IRS displayed what can most charitably be described as gross apathy in serving the Debtor with both its Opposition to the Motion and its Motion for Reconsideration long after same were filed with the Court.

■ There are, however, three (3) reasons why the Court will nevertheless proceed to grant the Motion for Reconsideration. First, as the IRS accurately points out, Bankruptcy Rule 9023 incorporates F.R.Civ.P. 59(e) "except as provided in Bankruptcy Rule 3008," the latter of which specifically permits a party to "move for reconsideration of an Order allowing or disallowing a claim against the estate," without any specific ten-day time limitation. The IRS' Motion for Reconsideration is within the scope of Rule 3008, and hence the ten-day stricture of F.R.Civ.P. 59(e) does not apply. *See In re Resources Reclamation Corporation of America,* 34 B.R. 771, 773 (9th Cir.Bankr.App.1983); *Karen-Richard Beauty Salon, Inc. v. Fontainebleau Hotel Corp.,* 36 B.R. 896, 897 (S.D.Fla.1983); and *In re Miles,* 39 B.R. 494, 497 (Bankr.W.D.N.Y.1984). We do note, however, that the repeated negligence of the IRS tempts us to exercise our discretion to disallow the claim, even if made under Rule 3008, as *Brielle Assoc. v. Graziano,* 685 F.2d 109, 111–12 (3d Cir. 1982), would authorize us to do.

■ Secondly, this Court erred in establishing a twenty-day deadline in its Order Requiring Answer. As Bankruptcy Rule 3007 provides, a claimant is entitled to notice "at least 30 days prior to the hearing" on "an objection to the allowance of a claim." Although the Debtor designated his pleading as a "Motion" objecting to the IRS' claim, which undoubtedly prompted the Clerk's Office in affixing a 20–day answer deadline, this pleading is clearly in

substance an objection to the allowance of the claim. Therefore, the response of the IRS, although it overlooks this point, was technically not untimely filed, per Rule 3007.

■ Finally, we express a strong preference to decide matters before us on the merits, and to develop a "standard of liberality" in considering motions to set aside dispositions not rendered on the merits, but rendered only due to a failure of a party to file a timely response, even due to negligence of counsel, where a bona fide defense and desire to defend appears. *See Medunic v. Lederer*, 533 F.2d 891, 893–94 (3d Cir.1976). As we indicate in the immediately following discussion, we believe that the $487.45 portion of the IRS' claim attributable to the Debtor's 1983 tax delinquency should definitely survive, and it is not clear that this Court's Order of August 8, 1986, did not wipe out even this claim.

The foregoing discussion leads us to the necessity to consider the merits of the Debtor's contention that the IRS' claim for the 1981 tax delinquency must be denied as untimely. We believe that, indeed, the merits of this Objection are manifest and that we must, for the most, reiterate this Court's Order of August 8, 1986.

■ Our discussion begins with the well-established law of this Circuit and this Court that the deadlines for filing proofs of claim are "strictly construed," *In re Pigott*, 684 F.2d 239, 242 (3d Cir.1982), even in the face of very compelling circumstances (In *Pigott*, the purported justification was disruption of the claimant's business by the nuclear accident at Three-Mile Island.), and that, even if so inclined, "a bankruptcy court has no ... equitable power to extend the deadline for the filing of proofs of claim." *In re Ryan*, 54 B.R. 105, 106 (Bankr.E.D.Pa.1985) (per GOLDHABER, CH. J.). *Accord: In re Telephone Communications of America, Inc.*, 49 B.R. 959, 962 (Bankr.E.D.Pa.1985) (per KING, J.). As a neighboring court accurately states, in *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985), "[i]n setting a bar date, the court prescribes a statute of

limitations which has been characterized as a prohibition and been viewed as peremptory."

■ Furthermore, the courts have been completely consistent in holding that, while amendments to more clearly set forth previously timely-filed claims are freely permitted after the bar date, amendments "are not to be used to assert an entirely new claim," *In re International Horizons, Inc.*, 751 F.2d 1213, 1215 (11th Cir.1985), nor can they "relate back to the date" of earlier proofs of claim when the earlier proofs "did not give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment." *In re Westgate-California Corp.*, 621 F.2d 983, 984 (9th Cir.1980). Hence, "[a]mendments after the bar date are to be scrutinized very closely to ensure that the amendment is in fact genuine and not an entirely new claim." *W.T. Grant, supra*, 53 B.R. at 422. *See also, e.g. In re Black & Geddes, Inc.*, 58 B.R. 547, 553 (S.D.N.Y. 1983); *In re Computer Devices, Inc.*, 51 B.R. 471, 477–78 (Bankr.D.Mass.1985); and *In re W.T. Grant Co.*, 37 B.R. 593, 594 (Bankr.S.D.N.Y.1984).

■ Many cases involving untimely "amendments" to claims involve filings by the IRS. The courts have generally held, consistent with the foregoing principles, that attempts by the IRS to utilize timely proofs of claim as a vehicle for later tagging on of additional types of taxes or additional tax years after the bar date are attempts to "assert an entirely new claim" which cannot be countenanced. *See International Horizons, supra* (attempt to add withholding and unemployment taxes to corporate income tax claims rejected); *In re Hunt*, 59 B.R. 718 (Bankr.D.Me.1986) (attempt to add employment taxes as amendment to income taxes disallowed); *In re Overly-Hautz Co.*, 57 B.R. 932 (excise taxes not allowed to be added to claims for corporate, withholding, and FICA taxes); and *In re Sapienza*, 27 B.R. 526 (Bankr.W. D.N.Y.1983) (amendments to allow later tax years not permitted).

We are also influenced heavily in reaching our decision by the presence of Bankruptcy Rule 3002(c)(1), which provides as follows:

> On Motion of the United States, ... before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States.

This rule appears expressly tailored to give an agency of the United States, such as the IRS, a dispensation not granted to other creditors to extend the time to file a claim. However, it is still necessary that the United States agency attempting to invoke this dispensation make a Motion pursuant to Rule 3002(c)(1) to do so. Here, where the IRS knew, per its dispatch of the Notice of Deficiency to the Debtor relating to his 1981 taxes prior to the bar date that it would be likely to have a future claim against the debtor, the setting was ideal for utilization of the Rule 3002(c)(1) procedure. However, since the IRS eschewed the use of this Rule, with no explanation for so doing, the Court holds that the IRS acted in a manner which, in itself, precluded consideration of its belatedly-filed claim.

Both parties rely heavily on the decision in *In re Miss Glamour Coat*, 80–2 U.S.T.C. ¶ 9737, at 85, 431 (S.D.N.Y. Opinion filed 10/8/80), which suggests that, in determining whether amendments should be allowed, the courts should consider five (5) factors, which are as follows:

> (1) whether the bankrupt and creditors relied upon the IRS' earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow pending the completion of the audit....
>
> (2) whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing this amendment to the IRS proof of claim....
>
> (3) whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of corporate taxes due....

> (4) the justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim ...
>
> (5) whether or not there are any other considerations which should be taken into account in assuring a just and equitable result....

*Id.* at 85,434 to 85,435 (citations omitted).

This Court is not inclined to consider an analysis of the equitable factors set forth in *Miss Glamour Coat* as determinative. Rather, we believe that the combination of the absolute nature of the policy barring late filings expressed in *Pigott*, and the failure of the IRS to utilize Bankruptcy Rule 3002(c)(1), are themselves sufficient to require preclusion of the IRS claim.

However, we do note that the five (5) *Miss Glamour Coat* factors have been referenced in several of the more recent decisions in this area, *e.g.*, *International Horizons*, *Overly-Hautz*, and *Miles*, *supra*. We further note that consideration of most, if not all, of the five (5) factors, suggests that we should *not* entertain the IRS' belated claim.

■ The easiest factor to consider is the fourth factor. As we indicated above, the IRS has offered virtually no justification for failure to request an extension of time per Rule 3002(c)(1). Since its dispatch of the pre-petition Notice of Delinquency establishes its knowledge of the potential of a 1981 delinquency, the explanation that the Debtor's late filing of his tax return justified this conduct must be totally rejected.

We also believe that the IRS was grossly negligent in not only filing a late claim, but in its filings in opposition to the Debtor's Motion objecting to its proofs of claim and even in filing the Motion for Reconsideration, as are recited above. Therefore, the IRS fairs badly on the third factor as well.

■ The discussion of the other three (3) *Miss Glamour Coat* factors is put into perspective by our analysis of the practical impact of our denial of that portion of the IRS claim relating to the Debtor's alleged

1981 tax liability upon the Debtor's bankruptcy case. We believe that, in light of the fact that the Debtor did not file his return until August 1, 1985, a date subsequent to the filing of his petition, the IRS' 1981 deficiency claim is a post-petition claim. "[P]ost-petition claims are generally disallowable in title 11 cases, including Chapter 13 cases." 5 COLLIER ON BANKRUPTCY, ¶ 1305.01, at 1305–2 (15th ed. 1986) (footnotes omitted). One of the few exceptions appears in 11 U.S.C. § 1305(a)(1), wherein it is provided as follows:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor—
>
> > (1) for taxes that become payable to a government unit while the case is pending; ...

As Collier notes, the characterization of a claim as post-petition applies to claims that *become payable* after filing, even though "the tax may have been assessed before the commencement of the case." 5 COLLIER, *supra,* ¶ 1301.05[2][B], at 1305–6 n. 40. Here, the Debtor's return was filed post-petition and hence both the assessment and the payment obligation were necessarily post-petition.

While the IRS can "elect to prove its claim against the Chapter 13 estate" even though it is a post-petition claim, it is submitted that such an election must be timely. *Id.,* at 1305–6. Foregoing this election does not eliminate the IRS' untimely claims, but only relegates the IRS to the status of a post-petition claimholder in reference to the 1981 deficiency. Since the IRS has the capacity to wield great powers qua the Debtor to collect post-petition claims after the bankruptcy stay order is dissolved, including the imposition of a tax lien against the Debtor's realty, it can scarcely be said that it would be highly prejudiced by the denial of its claim. The only practical consequence of allowing its claim for an additional sum of over $7,700.00 more than its timely-filed claim would be to throw an insurmountable monkey-wrench into the Debtor's already prob-lematical plans for reorganization. The likely result of allowing the claim would therefore be destruction of the Debtor's possibility of forming a feasible plan, dismissal of his case per the Trustee's Motion, and a mortgage foreclosure which would deprive the Debtor of his home, leave the secured creditors with doubtful prospects of satisfaction of even their claims in full, and leave the other creditors, including the IRS, empty-handed.

■ We therefore conclude that the first, second, and fifth *Miss Glamour Coat* factors weigh very heavily against the IRS. The Debtor and the other creditors which have struggled against the Debtor, most notably Germantown Savings Bank, his first mortgagee, and Beneficial Consumer Discount Co., which holds a second mortgage against his home, have clearly relied upon the lack of any priority claim of the IRS for any sum close to the $8,277.51 figure sought in the "Amended Claim," as such a claim would render the feasibility requirement unattainable to the Debtor. We cannot characterize the secured creditors' receipt of ultimate satisfaction of their claims, which is the best the Debtor can hope to provide them, even if the IRS' "amended claim" is disallowed, as "a windfall." Finally, we consider it totally "just and equitable" to allow the bumbling IRS to be relegated to its normal, post-petition claim status here and be compelled to wait for the ultimate satisfaction of its claim.

Hence, even if we were inclined to rely exclusively, or substantially, on the *Miss Glamour Coat* factors, we would clearly reach the same result, *i.e.,* that the IRS not be permitted to raise its claim to $8,277.51.

■ We do not, however, consider it equitable to deprive the IRS of its timely-filed priority claim of $487.45, arising from the Debtor's 1983 pre-petition tax delinquency. We believe that the IRS is entitled to one claim, although not a duplicate of its earlier claim, in the amount of $487.45. We will accordingly enter an Order consistent with this result.

## ORDER

AND NOW, this 26th day of November, 1986, consistent with the foregoing Opinion, it is ORDERED AND DECREED as follows:

1. The Motion of the IRS for Reconsideration of this Court's Order of August 8, 1986, is GRANTED.

2. The Motion of the Debtor Objecting to Allowance of Internal Revenue Service Claim No. 9 is nevertheless REAFFIRMED AND GRANTED, and such claim is DISALLOWED in part. However, the timely claim of the IRS in the amount of $487.45 shall remain as a valid priority claim.